Estate of John L. J. Belzer, Deceased, Girard Trust Company and Alexander Conn, Executors v. Commissioner.
Estate of Belzer v. Commissioner
Docket No. 108709.
United States Tax Court
1943 Tax Ct. Memo LEXIS 467; 1 T.C.M. (CCH) 539; T.C.M. (RIA) 43060; February 4, 1943
*467 Alexander Conn, Esq., 1420 Walnut St., Philadelphia, Pa., for petitioners. Lewis S. Pendleton, Esq., for respondent. HILL Memorandum Opinion HILL, Judge: Respondent determined a deficiency in estate tax in the amount of $2,357.01, resulting from a number of adjustments, only two of which are called in question here. Petitioners allege that respondent erred (1) in disallowing, to the extent of $5,000 a deduction for attorney's fees, and (2) a deduction of $21,500 for a claim against the estate. Petitioners are the executors under the will of John L. J. Belzer, deceased, who died April 9, 1937. The offices of both executors are at Philadelphia, Pa. The estate tax return was filed with the collector of internal revenue for the first district of Pennsylvania on July 8, 1938, on which date and on or about August 14, 1939, the executors made payments of estate tax in the amounts of $590.21 and $1,391.31, respectively. In defense of his determination, respondent makes only one general contention, namely, that the evidence adduced by petitioners is not legally sufficient to establish their right to the deductions claimed. In other words, respondent in effect relies upon the prima facie *468 correctness of the deficiency determined by him, and asserts that such determination should be affirmed for lack of proof to show error. Thus, it becomes our function here to examine into the sufficiency of the evidence for that purpose. In respect of the item of attorney's fees claimed to be deductible as administration expense, it appears from the statement attached to the deficiency notice that petitioners claimed a deduction of $13,000 and respondent allowed the amount of $8,300, whith the following explanation: "This item has been allowed as a deduction in the amount approved by the Court." Respondent makes no objection to the deduction on the ground that the attorneys' fees in question are not properly an administration expense, or that the amount claimed is in excess of reasonable remuneration for the services rendered, and the record before us discloses no support for such an objection. The facts of record on this point may be summarized as follows: Two attorneys were employed by the executors of decedent's estate, and the executors' account filed with the Probate Court included an amount for attorneys' fees. The fee of one attorney was $300, and there being no objection, *469 that amount was allowed by the court. The fee claimed by the other attorney was $13,000, and some of the beneficiaries expressed doubt and filed objections. This attorney thereupon agreed to take whatever amount the beneficiaries felt was a reasonable fee and later adjust the question of the balance of the fee. This was agreed to by all parties concerned, and the court allowed a fee of $8,000. Eventually the beneficiaries withdrew their objections and agreed to payment of the additional $5,000. Of this amount the executors of the estate paid $2,000 on November 30, 1939, $1,500 on April 23, 1941, and $1,500 on May 19, 1941. It is further shown that the services of the attorneys were rendered in connection with litigation of claims against the esstate, and it seems clear that the fees paid are within the definition of deductible administration expenses, under Art. 32 of Regulations 80. Art. 34 also provides: ART. 34. Attorney's fees. - The executor or administrator, in filing the return, may deduct such an amount of attorney's fees as has actually been paid or which at that time it is reasonably expected will be paid. If on the final audit of a return the fees claimed have not been *470 awarded by the proper court and paid, the deduction will, nevertheless, be allowed, provided the Commissioner is reasonably satisfied that the amount claimed will be paid and that it does not exceed a reasonable remuneration for the services rendered. * * * There is no suggestion in the present record that the attorneys' fees in controversy exceed reasonable remuneration, and it is established that the full amount has been paid upon express agreement of all interested parties that the amount was reasonable. Respondent's action on the first issue is reversed. The second issue involves a disallowance by respondent of a claim against the estate in the amount of $21,500. This claim arose under the following circumstance: In January 1933 the Pennsylvania Company for Insurance on Lives and Granting Annuities, sometimes herein called the Pennsylvania Company, as trustee was the registered and real owner of 215 shares of stock of the Sixth National Bank of Philadelphia. On or about January 17, 1933, the Pennsylvania Company sold the stock to E. W. Clark & Co., a co-partnership, acting as a principal. On February 1, and February 7, 1933, E. W. Clark & Co. sold the 215 shares of stock to *471 Belzer & Co., a co-partnership, engaged in business as brokers and dealers in securities, and composed of John Jacob Belzer, John L. J. Belzer, Charles H. B. Phillips, and J. Leroy Merscher. In negotiating the sale to Belzer & Co., both parties dealt as principals, although Belzer & Co., were in fact acting upon oral orders of a customer, one Albert M. Greenfield, who became the owner of 200 shares of the stock. These 200 shares were later transferred by Greenfield to a nominee, and thereafter on February 24, 1933, transferred to one Sarah B. Mayer, in whose name they were registered. The remaining 15 shares purchased by Belzer & Co. were sold to Henry W. Balka, trustee, and transferred of record on February 9, 1933. On February 28, 1933, the Sixth National Bank of Philadelphia became unable to meet its obligations and ceased business. On March 14, 1933, a conservator was appointed, who remained in charge of the bank's assets until appointment of a receiver on September 29, 1934. On November 22, 1934, the Comptroller of the Currency levied an assessment of $100 per share on the stock. Thereafter, the receiver brought suit against the Pennsylvania Company, who was adjudged liable *472 for the assessment. Upon satisfaction of the judgment rendered against it, the Pennsylvania Company instituted an action on August 24, 1938, against the co-partners of E. W. Clark & Co. upon the theory of liability over, and the co-partners of E. W. Clark & Co., upon a similar theory brought upon the record by Sci. Fa. proceedings, the co-partners of Belzer & Co., and the executors of the estate of John L. J. Belzer, deceased, as first additional defendants, and the executors of Belzer brought upon the record by Sci. Fa. proceedings Albert M. Greenfield, as second additional defendant. Three judgments were rendered in favor of the Pennsylvania Company against the co-partners of E. W. Clark & Co., original defendants, in the aggregate amount of $25,934.89, with interest at six per cent from May 27, 1938. The original defendants were given judgments in like amount and with the same interest over against the co-partners of Belzer & Co. and the executors of John L. J. Belzer, deceased, additional defendants; and these additional defendants in turn were given judgments, bearing the same interest, over against Albert M. Greenfield in the total amount of $24,085.12, and a judgment over against *473 Henry W. Balka, trustee, in the amount of $1,849.77. On or about March 25, 1941, pursuant to the judgments granted against them, above referred to, petitioners paid to E. W. Clark & Co., the full amount claimed as a deduction herein, together with interest and costs. The total amount of principal and interest so paid on the judgment was in excess of $30,000. Albert M. Greenfield, although liable over to petitioners on the judgments in the principal sum of $24,085.12, with interest from May 27, 1938, filed his debtor's petition for arrangement under Chapter XI of the Chandler Bankruptcy Act, wherein he proposed in substance to pay all creditors in full by delivering to them his personal notes due in 15 years after date of approval of the arrangement, with interest for the first two years at the rate of 1/2 of 1 per cent per annum and rising every two years thereafter by an additional 1/4th of 1 per cent to the date of maturity. It was to be further provided in the notes that 50 per cent of the gross earnings of Greenfield in excess of $100,000 annually would be applied ratably to payment of the principal of the notes. On July 5, 1940, petitioners filed a proof of claim in the office *474 of the referee before whom the proceedings for arrangement were then and are now pending. The deduction as claimed in the tax return filed by petitioners is on the basis of the assessment of $100 per share for the 215 shares of stock involved herein, without costs and interest which accrued as a result of the litigation. On or about August 8, 1942, petitioners sold, assigned and transferred to one George H. Johnson, for a cash consideration of $1,505.48, all of their right, title and interest in and to the claim filed in the matter of Albert M. Greenfield, debtor, in the proceedings for arrangement, above mentioned, and all of their right, title and interest in and to the judgments in their favor against Greenfield. Prior to the sale of the claim and judgments by petitioners, investigations were made to ascertain the financial condition of Greenfield and the probable value of the claim and judgments against him. One such investigation was made individually by the trust officer of the Girard Trust Company, one of the executors, and another by the statistical department of the Trust Company. The beneficiaries of decedent's estate also made an investigation. All of these investigations *475 led substantially to the same conclusion, namely, that the claim and judgments had but little value, probably not in excess of five per cent of the principal amount. The beneficiaries executed written authority to the executors to sell the claim and judgments to anyone who would buy them for five per cent of the face value. Respondent objects to the allowance of the claim against the estate in the amount of $21,500 substantially on the ground that the net amount by which the value of decedent's estate was reduced on account of the judgments rendered against and paid by the executors has not definitely been proved, because the value of the judgments against Greenfield and Balka have not been established, nor the value of petitioners' right to contributions from the former co-partners of Belzer & Co. In our opinion, respondent's objections are not well taken. First, in respect to the value of the right of contribution, it is shown that Belzer & Co. was composed of four partners, one of whom was the present decedent. Of the three remaining partners, one is confined in an insane asylum at Coatesville, Pennsylvania; another predeceased petitioner's decedent, leaving no estate, and the *476 third is now financially irresponsible. The right to enforce contributions from the former partners, if petitioners ever had such right, obviously was and now is without value. Furthermore, it would appear that such right, if it existed, was transferred to Johnson in connection with the transfer of the judgments against Greenfield. The value of the judgments against Greenfield is satisfactorily established by the evidence as not in excess of the consideration paid by Johnson. In respect of the value of petitioners' judgment against Balka, the record is silent. However, if we assume that the Balka judgment was worth face value of $1,849.77, plus interest, the deduction of this amount, plus the consideration received by petitioners for the Greenfield judgments, would leave a net reduction in the value of decedent's estate in excess of $21,500. The sole question here being the sufficiency of the proof, we hold that petitioners have established their right to the deduction claimed, and respondent's action accordingly is disapproved. Decision will be entered under Rule 50.